UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

DIANA A.,[1]

Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,

Defendant.

Case No. 25-cv-07424-SI

**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**

Re: Dkt. Nos. 13, 14

Pursuant to 42 U.S.C. § 405(g), plaintiff Diana A.[1] appeals the Social Security Administration's decision denying her disability insurance benefits claim. Plaintiff and defendant the Commissioner of Social Security (the "Commissioner") have filed motions for summary judgment. Dkt. No. 13 (Pl. Br.); Dkt. No. 14 (Def. Br.). For the reasons set forth below, the Court GRANTS plaintiff's motion and DENIES the Commissioner's motion.

**BACKGROUND**

**I.      Plaintiff's Medical History**

**A.      Dr. Khalil Rahmany, Ph.D.**

Plaintiff sought treatment from treating psychologist Dr. Khalil Rahmany, Ph.D., on an approximately weekly basis from January 2020 to December 2022 and July 2023 to July 2024. AR 591–94, 650–851. At her initial visit, Dr. Rahmany noted that plaintiff "presented as distressed and preoccupied with internal stimuli" and "ha[d] related symptoms of delusions of persecution and

---

[1] Partially redacted pursuant to Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

paranoid ideation, which have impacted her . . . functioning." AR 774. Thereafter, Dr. Rahmany consistently observed that plaintiff presented as "distressed," had a "depressed mood" and "labile affect," showed symptoms of "paranoid" or "delusional thinking" and "delusions of persecution," had a "faulty and distorted belief system," and was "preoccupied with internal stimuli." AR 591–94, 650–851.

In a March 4, 2024 psychological evaluation, Dr. Rahmany observed that plaintiff "presented as preoccupied and distressed with internal stimuli" and "indicated symptoms of delusions of persecution, paranoid ideation, distorted cognition and preoccupation with internal stimuli." AR 592; *see* AR 591 (Plaintiff "indicated that she is being drugged by someone, 'majority of the time when asleep'" by "family members or [the] CIA."). Dr. Rahmany further found that plaintiff's "symptoms of paranoia, delusions of persecution, poor impulse control, low frustration tolerance, and preoccupation with internal stimuli" "markedly impaired" her overall social interaction. AR 592. In addition, plaintiff's "poor impulse control, irritable mood and poor judgment . . .significantly aggravated her decision-making and task completion abilities" such that "[h]er current psychiatric condition has caused marked impairment in her overall ability to compete in an open job market for gainful employment." *Id.*

### B.    Dr. Megan Stafford, Psy. D.

Consultative examiner Dr. Megan Stafford, Psy. D., examined plaintiff on October 15, 2024. AR 852–60. During her examination, Dr. Stafford found that plaintiff's "concentration, persistence, and pace were within normal limits" and that she "displayed fair insight and judgment." AR 854–55. Plaintiff's "thought process was grossly logical, organized, and coherent," "revealed no loosening of associations," and "contained no overt delusions." AR 854. Plaintiff "denied auditory and visual hallucinations" and "did not appear internally preoccupied." *Id.* Dr. Stafford also observed that plaintiff's "mood was dysthymic and her affect congruent as she started crying when asked [about] her mood" to which plaintiff "stated, 'Not good. It's more depressed.'" *Id.*

Dr. Stafford diagnosed plaintiff with unspecified depressive disorder. AR 856. Dr. Stafford opined that plaintiff's ability to perform simple and repetitive tasks, to perform detailed and complex

United States District Court
Northern District of California

tasks, to accept instructions from supervisors, to perform work activities on a consistent basis without special or additional instructions, and to maintain regular attendance in the workplace is unimpaired. AR 857. Plaintiff's ability to interact with co-workers, supervisors, and the public and her ability to perform work activities on a consistent basis without special or additional instructions are mildly to moderately impaired. *Id.* Lastly, Dr. Stafford found that Plaintiff's ability to deal with the usual stress encountered in the workplace is moderately impaired. *Id.*

## II.     Administrative Proceedings

On September 26, 2022, plaintiff protectively filed an application for Social Security Disability Insurance Benefits under Title II of the Social Security Act. Plaintiff alleged disability due to depression, back pain, arthritis, and high blood pressure beginning October 19, 2021. AR 110, 303–06, 359.

The Social Security Administration denied plaintiff's application on February 13, 2023. AR 106–13. On March 7, 2023, plaintiff filed a request for reconsideration, which the Social Security Administration denied on February 15, 2024. AR 114–20, 126–30.

Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). AR 137–38, 196. ALJ David LaBarre held an in-person hearing on September 13, 2024. AR 65–105, 227. At plaintiff's request, the ALJ held a virtual supplemental hearing on April 15, 2024. AR 36–64, 274, 460. Plaintiff attended and was represented by counsel at both hearings. AR 38, 67.

The ALJ issued an unfavorable decision on May 1, 2025. AR 17–28. At step one of the five step disability analysis, the ALJ found that plaintiff had not engaged in substantial gainful activity since October 19, 2021. AR 19. At step two, the ALJ found that plaintiff has the following severe impairments: major depressive disorder; schizoaffective disorder, depressed type; and anxiety disorder. AR 20. At step 3, the ALJ found that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526). The ALJ found that plaintiff retains the following residual functional capacity ("RFC"):

United States District Court
Northern District of California

3

> [Plaintiff] can understand, remember, and carry out simple instructions and tasks, and make simple work related decisions; she can occasionally interact with coworkers, but not in a tandem team or group setting, and can occasionally interact with the public, but only superficial interaction such as greeting customers or directing a customer to the location of the nearest restroom; she can have occasional workplace changes; she may miss up to one day of work a month at times, but would not consistently miss one day every month such that she would be absent five times per year.

AR 22.

At step four, the ALJ found that plaintiff could not perform her past relevant work as a home attendant. AR 26. Before proceeding to step five, the ALJ found that plaintiff was 57 years old on the alleged disability onset date, making her an individual of advanced age as defined by 20 C.F.R. § 404.1563 and that she has at least a high school education. AR 26.

At step five, after considering plaintiff's age, education, work experience, and RFC, as well as the opinion of a vocational expert, the ALJ determined that plaintiff could perform jobs existing in the economy, including Cleaner II; Hand Packager; and Cleaner, Industrial. AR 27. The ALJ thus found that plaintiff has not been disabled from October 19, 2021 through May 1, 2025. AR 27.

After the Appeals Council denied review, plaintiff filed this action for judicial review under 42 U.S.C. § 405(g). AR 1–5; Dkt. No. 1.

## LEGAL STANDARDS

### I.    Standard of Review

The Social Security Act authorizes an Article III court to review final decisions of the Commissioner. 42 U.S.C. § 405(g). This Court may enter a judgment affirming, modifying or reversing the decision of the Commissioner, with or without remanding the case for a rehearing. *Id.* Factual findings of the Commissioner are conclusive if supported by substantial evidence. *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). The Court may set aside the Commissioner's final decision when that decision is based on legal error or where the findings of fact are not supported by substantial evidence in the record taken as a whole. *Tackett v. Apfel*, 180 F.3d 1094, 1097–98 (9th Cir. 1999). Substantial evidence is "more than a mere scintilla but less than a preponderance." *Id.* at 1098. "Substantial evidence means such relevant evidence as a

reasonable mind might accept as adequate to support a conclusion." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012) (internal quotation marks omitted). To determine whether substantial evidence exists, the Court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Commissioner's conclusion. *Tackett*, 180 F.3d at 1098. "Where evidence is susceptible to more than one rational interpretation," the ALJ's decision must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

**II.     Finding of Disability**

A claimant is "disabled" under the Social Security Act if: (1) the claimant "is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months[,]" and (2) the impairment is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 1382c(a)(3)(A)–(B). The SSA regulations provide a five-step sequential evaluation process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4). The claimant has the burden of proof for steps one through four and the Commissioner has the burden of proof for step five. *Tackett*, 180 F.3d at 1098.

The five steps of the inquiry are:

> 1. Is claimant presently working in a substantially gainful activity? If so, then the claimant is not disabled within the meaning of the Social Security Act. If not, proceed to step two. *See* 20 C.F.R. §§ 404.1520(b), 416.920(b).
>
> 2. Is the claimant's impairment severe? If so, proceed to step three. If not, then the claimant is not disabled. *See* 20 C.F.R. §§ 404.1520(c), 416.920(c).
>
> 3. Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 220, Appendix 1? If so, then the claimant is disabled. If not, proceed to step four. *See* 20 C.F.R. §§ 404.1520(d), 416.920(d).
>
> 4. Is the claimant able to do any work that he or she has done in the past? If so, then the claimant is not disabled. If not, proceed to step five. *See* 20 C.F.R. §§ 404.1520(e), 416.920(e).

> 5. Is the claimant able to do any other work? If so, then the claimant is not disabled. If not, then the claimant is disabled. *See* 20 C.F.R. §§ 404.1520(f), 416.920(f).

*Bustamante v. Massanari*, 262 F.3d 949, 954 (9th Cir. 2001). The ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry. *Tackett*, 180 F.3d at 1098 n.3.

In between the third and fourth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). 20 C.F.R. §§ 404.1520(a)(4), (e), 416.945(a)(5)(i). To determine the RFC, the ALJ considers the impact of the claimant's symptoms on his or her ability to meet the physical, mental, sensory, and other requirements of work. *Id.* §§ 404.1545(a)(4), 416.945(e). The ALJ will evaluate all the claimant's symptoms and the extent to which these symptoms are consistent with evidence in the record. *Id.* The evidence can include the claimant's own statements about his or her symptoms, but such statements must be adequately supported by the record in order to establish a disability. *Id.* In order to determine whether the claimant's statements are adequately supported, the ALJ must first determine whether the claimant has a medical impairment that could reasonably be expected to produce his or her symptoms, and then must evaluate the intensity and persistence of the claimant's symptoms. *Id.* When evaluating intensity and persistence, the ALJ must consider all the available evidence, including the claimant's medical history, objective medical evidence, and statements about how the claimant's symptoms affect him or her. *Id.* The ALJ cannot reject statements about the intensity and persistence of symptoms solely because no objective medical evidence substantiates the statements. *Id.* §§ 404.1529(c)(2), 416.929(c)(2). The ALJ must also consider factors relevant to the claimant's symptoms, such as the claimant's daily activities, the claimant's medications and treatment, any other measures the claimant uses to alleviate symptoms, precipitating and aggravating factors, and any other factors relevant to the claimant's limited capacity for work due to his or her symptoms. *Id.* § 416.929(c)(3)(i)-(vii). After determining the RFC, the ALJ proceeds to steps four and five of the disability inquiry.

///

**DISCUSSION**

Plaintiff argues the ALJ improperly found the opinion of Dr. Rahmany not persuasive and improperly discounted plaintiff's symptom testimony.

## I.    Dr. Rahmany's Medical Opinion

Although the ALJ found that Dr. Rahmany's opinion is "supported by accompanying treatment records and his observations of the claimant's behavior and generally poor attention and concentration during the March 2024 evaluation," the ALJ ultimately concluded that Dr. Rahmany's opinion is "generally unpersuasive." AR 25. The ALJ explained that "the degree of limitation assessed [by Dr. Rahmany] is inconsistent with the absence of mental status abnormalities in medical treatment records and with clinical observations during the consultative psychological examination[.]" *Id.* The ALJ further found that Dr. Rahmany's opinion "is also inconsistent with evidence that the claimant has been able to drive, shop, care for herself, obtain meals, interact appropriately with providers, and seek out medical care independently." *Id.*

### A.    Legal Standard

For applications filed on or after March 27, 2017, such as here, "the former hierarchy of medical opinions—in which we assign presumptive weight based on the extent of the doctor's relationship with the claimant—no longer applies." *Woods v. Kijakazi*, 32 F.4th 785, 787 (9th Cir. 2022). Under the revised regulations, 20 C.F.R. § 404.1520c and § 416.920c, the ALJ will consider medical opinions "using the factors listed in paragraphs (c)(1) through (c)(5) . . . ." 20 C.F.R. § 416.920c(a). Those factors are: (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) "other factors that tend to support or contradict a medical opinion or prior administrative medical finding." *Id.* § 416.920c(c). In determining how persuasive a medical opinion is, the most important factors are supportability and consistency. *Id.* § 416.920c(a), (b)(2). "Therefore, [the agency] will explain how [it] considered the supportability and consistency factors for a medical source's medical opinions . . . ." *Id.* § 416.920c(b)(2). The agency "may, but [is] not required to, explain how [it] considered the factors in paragraphs (c)(3)

United States District Court
Northern District of California

through (c)(5) . . . ." *Id.* "Even under the new regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." *Woods*, 32 F.4th at 792. "The agency must articulate . . . how persuasive it finds all of the medical opinions from each doctor or other source." *Id.* at 791 (citing 20 C.F.R. § 404.1520c(b) (internal quotation marks omitted)).

### B.    Analysis

Plaintiff argues that the ALJ erred in finding that Dr. Rahmany's opinion was not persuasive. Pl. Br. at 14–20. Specifically, plaintiff contends that the ALJ improperly relied on medical records by non-mental health providers treating plaintiff for other ailments. *Id.* at 17; *see* AR 25. The Commissioner contends that the ALJ correctly discounted Dr. Rahmany's opinion in light of its inconsistencies in the record. Def. Br. at 5.

The Court agrees with plaintiff. The "normal, non-suicidal" psychiatric findings cited by the ALJ were made when plaintiff sought treatment for non-mental health related concerns and were documented by non-mental health providers. *See, e.g.*, AR 468–71, 472–75 ("tele visit for frequent urination and difficult to hold urine in her bladder" and follow up); AR 476–79 ("tele visit for having pain in her RT foot secondary to a MVA few days ago"); AR 503–06 ("Video/tele visit for having Ch. throat irritation and Ch. sore throat"); AR 507–10 ("Office visit for having sore throat and BL ear pain due to URI"); AR 516–23, 525–28 ("Video/tele visit for having pain in her LT ear and LT mastoid area" and follow up); AR 533–36 ("Video/tele visit for having night sweats for a while"); AR 537–40 ("Video/tele visit for having burning with urination for the past 2 days"); AR 541–44 ("Video/tele visit for having sore throat and general body pain for the past two few days"); AR 545–48 ("Video/tele visit for having difficulty in falling in to sleeping"); AR 549–52 ("video/tele visit for having a sense of incomplete bowel evacuation and abdominal discomfort"); AR 553–56 ("video visit for having burning with urination for the past few days"); AR 565–68 ("primary encounter diagnosis" of "[c]hronic idiopathic constipation"); AR 581 ("The patient presents with a chief complaint of constant burn of the female genitourinary system."). These observations are less detailed and more sporadic than the findings of Dr. Rahmany, whom plaintiff saw weekly and

United States District Court
Northern District of California

8

specifically for mental health care. *See Stremple v. Comm'r of Soc. Sec.*, No. 20-CV-01139-GSA, 2024 WL 1623256, at *7 (E.D. Cal. Apr. 15, 2024) ("[T]hese mental status findings were documented by non-mental health professionals at visits for unrelated purposes, eg., neuropathy and an OB/GYN referral. These findings were not as detailed or relevant as the findings of the two consultative psychologists, Drs. Portnoff and Michiel, to whom Plaintiff was referred for the specific purpose of evaluating her mental fitness to work.") (footnote omitted); *Za Xiong Moua v. Saul*, No. 19-CV-00516-SKO, 2020 WL 5257592, at *9 (E.D. Cal. Sept. 3, 2020) (ALJ erred in rejecting treating psychiatrist's opinion as inconsistent with objective medical evidence because, among other things, "many of the treatment notes that the ALJ cites are not in the context of mental status examinations by a treating psychiatrist, but rather general observations by other professionals in the context of physicals, appointments for medication refills, or other general and non-mental health specific appointments."); *Noa v. Berryhill*, No. 17-CV-05147-MEJ, 2018 WL 1696819, at *5 (N.D. Cal. Apr. 6, 2018) ("The ALJ does not explain how this observation, made by a treating physician who does not specialize in mental health and was examining Plaintiff for back pain before she first developed depression, contradicts or undermines the opinion of Dr. Wiebe, a mental health expert who examined Plaintiff almost two years later specifically for the purpose of establishing any impairments based on mental health.").

Moreover, the fact that plaintiff at times denied psychiatric symptoms is not, in and of itself, a basis to discount Dr. Rahmany's opinion, as it is possible that plaintiff simply was not experiencing any symptoms when she was questioned. *See Garrison v. Colvin*, 759 F.3d 995, 1017 (9th Cir. 2014) ("As we have emphasized while discussing mental health issues, it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment. Cycles of improvement and debilitating symptoms are a common occurrence, and in such circumstances it is error for an ALJ to pick out a few isolated instances of improvement over a period of months or years and to treat them as a basis for concluding a claimant is capable of working.").

## II.    Plaintiff's Symptom Testimony

Plaintiff argues the ALJ improperly discounted her symptom testimony without articulating

United States District Court
Northern District of California

specific, clear, and convincing reasons supported by substantial evidence in the record.  Pl. Br. at 8–14.  The Commissioner contends that the ALJ correctly discounted plaintiff's symptom testimony in light of the medical and other evidence in the record. Def. Br. at 1.

### A.     Legal Standard

The Ninth Circuit follows a two-step test for deciding what weight to give to a plaintiff's symptom testimony.  At step one, the ALJ must ascertain whether the plaintiff has presented "objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017) (quoting *Garrison*, 759 F.3d at 1014–15).  If the plaintiff satisfies step one, and there is no evidence of malingering, then at step two, the ALJ can reject the plaintiff's testimony about the severity of his symptoms only by providing specific, clear, and convincing reasons for doing so.  *Id.* "This requires the ALJ to specifically identify the testimony from a claimant she or he finds not to be credible and explain what evidence undermines that testimony." *Lambert v. Saul*, 980 F.3d 1266, 1277 (9th Cir. 2020) (citation modified); *see Smartt v. Kijakazi*, 53 F.4th 489, 499 (9th Cir. 2022) ("Ultimately, the 'clear and convincing' standard requires an ALJ to show his work[.]").  This clear and convincing standard is the most demanding standard required in Social Security cases. *Trevizo*, 871 F.3d at 678.

### B.     Analysis

#### 1.     Consistency with Medical Evidence

The ALJ found that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record[.]"  AR 23.  As the ALJ did not find that plaintiff was malingering, the ALJ must provide "specific, clear, and convincing reasons" for rejecting plaintiff's testimony.  The ALJ failed to do so here.

As explained above, the ALJ's finding that Dr. Rahmany's opinion not persuasive is not

10

supported by substantial evidence.  Thus, to the extent the ALJ did not consider Dr. Rahmany's opinion and treatment records in evaluating plaintiff's credibility, this was error.

The ALJ also pointed to the fact that plaintiff "has not been psychiatrically held or admitted[.]"  AR 24.  However, Dr. Rahmany's psychological evaluation notes that plaintiff "was 5150ed and subsequently hospitalized at John George in 2000."  AR 591.  Moreover, a lack of a history of psychiatric holds or hospitalizations does not undermine plaintiff's symptom testimony. *Smith v. Saul*, 820 F. App'x 582, 585 (9th Cir. 2020) ("That Smith at times did not seek 'regular psychiatric treatment' or hospitalization also does not cast doubt on her symptom testimony, particularly given that she continued her mental-health medication during such times and stated that she was unable to 'afford to continue seeing her' mental-health practitioner.").

### 2.      Plaintiff's Daily Activities

The ALJ also cited plaintiff's testimony that she "drives, shops for groceries, and goes out for meals[,]" as well as evidence that she "has been able to care for herself, request medication refills and blood work, and take prescribed medication independently despite alleged delusions of being poisoned or harmed" and "has been able to make and keep medical appointments and follow ups for routine care and a variety of short-lived complaints such as an earache and cold symptoms." AR 24; *see* AR 855 (plaintiff "drives a vehicle, goes grocery shopping, makes meals, and independently takes her medication and keeps her appointments.").

"[I]f a claimant engages in numerous daily activities involving skills that could be transferred to the workplace, the ALJ may discredit the claimant's allegations upon making specific findings relating to those activities."  *Burch v. Barnhart*, 400 F.3d 676, 681 (9th Cir. 2005) (citations omitted).  That said, "[t]hough inconsistent daily activities may provide a justification for rejecting symptom testimony, 'the mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from her credibility as to her overall disability.'"  *Revels v. Berryhill*, 874 F.3d 648, 667 (9th Cir. 2017) (quoting *Benecke v. Barnhart*, 379 F.3d 587, 594 (9th Cir. 2004)) (ellipses in the original; additional citation omitted); *see Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001) ("One does not need to be 'utterly incapacitated' in order to be disabled.").  Indeed,

<div style="margin-left: margin">United States District Court<br>Northern District of California</div>

"'claimants should not be penalized for attempting to lead normal lives in the face of their limitations.'" *Smith*, 820 F. App'x at 585 (quoting *Reddick v. Chater*, 157 F.3d 715, 722 (9th Cir. 1998)). However, "if a claimant 'is able to spend a *substantial part* of her day engaged in pursuits involving the performance of physical functions that are transferable to a work setting, a specific finding as to this fact may be sufficient to discredit a claimant's allegations." *Vertigan*, 260 F.3d at 1049 (citation and brackets omitted; emphasis in the original).

The ALJ failed to make any specific findings that plaintiff spends a "substantial part" of her day driving, shopping for groceries, and going out for meals. Plaintiff testified that in a "typical day," she cleans up, buys groceries if she needs something, and goes to her doctor if she has an appointment. AR 78. Plaintiff also testified about going to McDonalds to eat. AR 56. However, there is no evidence as to how often plaintiff performs these activities or how long they take, nor did the ALJ explain how these activities are transferrable to the workplace.[2] *See Holcomb v. Saul*, 832 F. App'x 505, 506 n.1 (9th Cir. 2020) ("[T]he ALJ noted that Holcomb's daily activities were consistent with the ability to perform 'work activity,' but the ALJ did not make the required 'specific finding' that Holcomb participated in those daily activities for a 'substantial part of his day.'") (citation omitted); *Colter v. Berryhill*, 685 F. App'x 616, 617 (9th Cir. 2017) ("In rejecting Colter's complaints, the ALJ cited daily activities that would have occupied only a small portion of Colter's day. The ALJ did not specifically find that Colter would have been capable of performing those activities for a substantial portion of the day or that those activities could be transferred to a work setting."); *Smith*, 820 F. App'x at 585 ("We have long recognized that many home activities are not easily transferable to what may be the more grueling environment of the workplace, . . . particularly for claimants suffering from mental illness, who may be able to limit environmental stressors, and thus experience improved functioning, at home in a way that is impracticable at work.") (citation modified); *Hardison v. Berryhill*, 703 F. App'x 513, 514 (9th Cir. 2017) ("The ALJ failed to provide

---

[2] Plaintiff testified that she is unhoused and lives in her car. AR 78. Given her living situation, it is conceivable that she frequently drives, purchases groceries, and goes out to eat out of necessity. *See Ancynthina H. v. Saul*, No. SACV 19-01545 PVC, 2020 WL 9422346, at *5 (C.D. Cal. Nov. 24, 2020) ("Because Plaintiff is homeless and lives alone, the fact that Plaintiff carries out basic daily activities like driving a car does not necessarily attest to her health and functionality.").

specific, clear and convincing reasons supported by substantial evidence for finding Hardison's symptom testimony less than fully credible" where, among other things, "the ALJ neither made specific findings nor pointed to any record evidence to support his conclusion that Hardison's daily activities were 'transferable' to a work setting or that she spent a 'substantial' part of any day engaged in transferrable skills."); *Shawn W. v. O'Malley*, No. 23CV1464-LL (MSB), 2024 WL 3567514, at *9 (S.D. Cal. July 29, 2024), *report and recommendation adopted*, No. 23cv1464-LL (MSB), 2024 WL 3746270 (S.D. Cal. Aug. 9, 2024) (Plaintiff's "ability to drive, prepare meals, watch TV, manage funds, and handle his own medical care also does not negate his claim that he has trouble concentrating, focusing, following instructions, completing tasks, and maintaining a regular work schedule. Plaintiff admits he can do tasks for a couple hours at a time, but these daily activities do not automatically transfer to his ability to work a regular 8-hour day, seven days a week. Indeed, these daily activities tend to be consistent with chronic mental disability.") (citations omitted).

### 3. Medication

To the extent the ALJ relied on evidence showing that plaintiff benefitted from medications (AR 24), the ALJ failed to show that plaintiff experienced improvement sufficient to make her capable of work. *See Garrison*, 759 F.3d at 1017 ("Reports of 'improvement' in the context of mental health issues must be interpreted with an understanding of the patient's overall well-being and the nature of her symptoms . . . . They must also be interpreted with an awareness that improved functioning while being treated and while limiting environmental stressors does not always mean that a claimant can function effectively in a workplace."). This is particularly true in light of the evidence that plaintiff experiences side effects that make it difficult for her to function. AR 88 (medications "caus[e] . . . heart pain and rapid heartbeat and sometimes dizziness . . . . [I]t makes me sleep sometimes, so I can't get up in the morning"); AR 481 ("She has the H/O depression and tried medications in the past but stopped them due to SE."); *see* 20 C.F.R. § 404.1529(c)(3)(iv) ("Factors relevant to your symptoms . . . which we will consider include . . . side effects of any medication you take or have taken to alleviate your pain or other symptoms.").

**CONCLUSION**

For the reasons stated above, the Court GRANTS plaintiff's motion for summary judgment and DENIES the Commissioner's cross-motion for summary judgment. The Court REMANDS this case pursuant to sentence four of 42 U.S.C. § 405(g) for further administrative proceedings consistent with this Order.

**IT IS SO ORDERED**.

Dated: May 1, 2026

SUSAN ILLSTON
United States District Judge